IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:25-CV-38-M

ROBIN MODLIN,

Plaintiff/Claimant,

v.

FRANK BISIGNANO,
*Commissioner of Social Security*,

Defendant.

MEMORANDUM AND RECOMMENDATION

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-17, -19]. Claimant Robin Modlin ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). Having carefully reviewed the administrative record and the briefs submitted by the parties, it is recommended that the final decision of the Commissioner be affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on June 8, 2020, alleging disability beginning that same date. (R. 196–97, 877). The claim was denied initially and upon reconsideration. (R. 78–106). A hearing before an Administrative Law Judge ("ALJ") was held on July 6, 2022, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 37–77). On September 15, 2022, the ALJ issued a decision denying Claimant's request for benefits, (R. 8–28), and the Appeals Council denied Claimant's request for review, (R. 1–7). Claimant filed a complaint in this court seeking review,

No. 2:23-CV-22-BO, and the court remanded the matter on Defendant's consent motion for further administrative proceedings. (R. 943–51). On November 17, 2023, the Appeals Council remanded the case to the ALJ for resolution of issues regarding consideration of Claimant's migraine headaches. (R. 938–42). On April 10, 2024, the same ALJ held a second administrative hearing, (R. 900–35), and on June 27, 2024, again denied Claimant's request for benefits, (R. 873–99). On review, the Appeals Council found no basis for changing the ALJ's decision and did not assume jurisdiction. (R. 866–72). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R.

§ 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had unsuccessful work attempts but had not engaged in substantial gainful activity since the alleged onset date of June 8, 2020. (R. 879). Next, at step two, the ALJ determined Claimant had the severe impairments of cervical degenerative disc disease, epilepsy, obesity, and depression disorder with anxiety. (R. 879). The ALJ also found that Claimant's migraines and other headaches (i.e., headaches secondary to the Claimant's cervical spine impairment, mild chronic sinus inflammation, or iron deficiency anemia) are not severe, do not meet the durational requirement of inadequately controlled symptoms that impose more than slight limitation for basic work related activities, and/or they are secondary to another primary impairment and are properly considered in the evaluation of such primary impairment; and her pulmonary impairments, iron deficiency, gastroesophageal reflux disease without esophagitis, hypertension, eczema, and obstructive sleep apnea were also not severe. (R. 879–82). The ALJ determined Claimant had no medically determinable cardiac impairment. (R. 883). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 883–85). Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace and mild limitations in interacting with others and in adapting or managing oneself. (R. 884–85).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity

("RFC"), finding Claimant had the ability to perform light work[1] with the following limitations:

> [S]he can occasionally balance, stoop, kneel, crouch, crawl, or climb stairs or ramps, but can never climb ladders, ropes, or scaffolds; she must avoid all exposure to hazards especially unprotected heights or moving machinery. Also, the claimant is limited to the ability to understand, remember, and carry out simple instructions and some detailed instructions and can use judgment to make such work related decisions; she can sustain concentration, attention, and pace sufficient enough to carry out those simple and detailed instructions for 2 hour intervals over the course of typical 8 hour workday; she can work in occupations that require interactions with co-worker, supervisors, and the public; she can adapt to changes in work setting or work processes.

(R. 886–90). In making this assessment, the ALJ found insufficient objective and other evidence to support many of the Claimant's allegations regarding the frequency and intensity of her symptoms. (R. 887). At step four, the ALJ concluded Claimant was unable to perform her past relevant work as an employability specialist or file clerk/case worker. (R. 890). At step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Claimant can perform. (R. 890–91).

## V. DISCUSSION

Claimant contends the ALJ erred by failing to find her migraine headaches were a severe impairment and to include resulting limitations in the RFC. Pl.'s Br. [DE-17] at 5–16. The Commissioner contends that the ALJ's step two finding regarding the severity of Claimant's migraine headaches is supported by substantial evidence, and the ALJ sufficiently accounted for her non-severe migraines in the RFC. Def.'s Br. [DE-19] at 7–19.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

### A. Step Two - Severity

At step two the ALJ must consider the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). To be found disabled, an individual must have a medically determinable severe physical or mental impairment or combination of impairments that meets the duration requirement. *Id.* An impairment is "severe" when it significantly limits an individual's physical or mental ability to do basic work activities, *id.*, while an impairment or combination of impairments is considered "not severe" when it does not significantly limit an individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1522. The burden of proof and production during the second step rests on the claimant. *Pass*, 65 F.3d at 1203. "As long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process[.]" *Pittman v. Astrue*, No. 5:08-cv-83-FL, 2008 WL 4594574, at *4 (E.D.N.C. Oct. 10, 2008). Thus, any error at step two in failing to properly consider whether an impairment is severe may be harmless where the ALJ considers that impairment in subsequent steps. *See Jones v. Astrue*, No. 5:07-cv-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (no reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation provided the ALJ considers that impairment in subsequent steps).

Here, at step two, the ALJ considered Claimant's headaches. The ALJ found that Claimant experienced "multifactorial headaches" and that the treatment notes did not always identify or distinguish the etiology of headache symptoms. (R. 879). The ALJ identified two "distinct impairments" associated with Claimant's headaches: migraine headaches, a primary headache disorder; and headaches secondary to her cervical spine impairment. *Id.* The ALJ also noted evidence of headaches due to mild chronic sinus inflammation and iron deficiency anemia. *Id.*

Social Security Ruling ("SSR") 19-4p explains when a primary headache disorder qualifies as a medically determinable impairment and how claims involving a primary headache disorder are evaluated. 2019 WL 4169635, at *2 (Aug. 26, 2019). It defines "primary headaches" as "occurring independently" and "not caused by another medical condition," while secondary headaches are "symptoms of another medical condition such as fever, infection, high blood pressure, stroke, or tumors."[2] *Id.* at 3. Migraines are considered a primary headache, *id.*, and the ALJ so found but concluded they are not severe and do not meet the durational requirement of inadequately controlled symptoms that impose more than slight limitation for basic work-related activities. (R. 879–80). While Claimant disputes the ALJ's finding that her migraines were not severe, because the ALJ considered the limiting effects of her migraines in formulating the RFC, any error in the severity classification is harmless. *See Bryan v. Kijakazi*, No. 4:20-CV-22-D, 2021 WL 4304863, at *5 (E.D.N.C. Aug. 23, 2021) ("Even if the ALJ erred in finding Claimant's headaches were nonsevere, the error was harmless because the ALJ proceeded to consider Claimant's headaches in formulating the RFC.") (citing *Winston v. Astrue*, No. 4:11-CV-107-D, 2012 WL 4086448, at *4 (E.D.N.C. Sept. 17, 2012)), *report and recommendation adopted*, 2021 WL 4302404 (E.D.N.C. Sept. 21, 2021). Ultimately, the determinative question is whether the ALJ's RFC regarding the limiting effects of Claimant's migraines is supported by substantial evidence.

---

[2] The ALJ determined Claimant's headaches secondary to her cervical spine impairment were not a medically determinable impairment but were a symptom of her cervical degenerative disc disease, which the ALJ found was a severe impairment. (R. 880). The ALJ noted that Claimant experienced periods of significant relief from her headaches from the treatment of her cervical spine with cervical nerve block injections in late 2022 and in August 2023, (R. 1159), but still included limitations to avoid all exposure to hazards and never climb ladders, ropes, or scaffolds in the RFC to account for headache related symptoms. (R. 880). Claimant does not take issue with the ALJ's classification of her headaches secondary to her cervical spine as a non-medically determinable impairment.

### B. RFC Limitations for Migraines

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636).

Here, the ALJ found that Claimant's migraines were reasonably controlled by medication and that her reports of having debilitating migraines 15 days per month were not supported by the objective or other evidence. (R. 880–81, 887); as a result, the ALJ did not impose limitations for photophobia, phonophobia, time off task, or absenteeism in the RFC, which Claimant argues was erroneous and based on a "flawed and legally insufficient" analysis. Pl.'s Br. [DE-17] at 8, 13.

The ALJ considered that Claimant's medical records mentioned headache symptoms related to a possible seizure event during a February 2018 emergency room visit, (R. 458, 477–

83); she first reported migraines in January 2020 to a new primary care provider, Dr. Lane, (R. 545–46); she was referred to a neurologist, Dr. Price, who diagnosed her with migraines in April 2020, and he continued her seizure medication, (R. 581–82); the record first reflected acute headache complaints in early 2021, she was started on anticonvulsant medication, and her headaches were noted to be "resolved" until November 2021, when her dose was increased, and then until May 2022, when she started monthly Aimovig injections, (R. 631–32, 649, 680, 682–84, 724–25, 838–40). (R. 880).

The ALJ discussed that since starting in-home Aimovig injections, Claimant's migraines have been reasonably controlled based on her reports to providers, except for times when the medication wears off within a week of her next scheduled home injection, which she had recently reported, and further medication adjustment was to be considered by the neurology clinic at her next visit. (R. 1146–48, 1162–65, 1546–49). *Id.* The ALJ, however, found that since July 2023, "there are no records of her seeking treatment for acute headache symptoms, and she was authorized for a refill of her Aimovig in January 2024,"[3] and Claimant reported she did not have headache symptoms during the gaps between the "acute experiences noted above." (R. 636, 649, 673, 826, 828, 832, 881, 1156, 1630). The ALJ further found that each time Claimant experienced a symptom exacerbation her medication was adjusted with good relief and concluded:

> There is no indication that her latest symptom exacerbation will not be addressed with medication regiment change as medically warranted. Thus, the claimant's migraine headaches are not severe for any 12-month period since her alleged onset date. Such exacerbations described in testimony of headaches causing her to be bedridden 15 days each month are not reflected in neurology clinic notes, longitudinal PCP clinic records, nor the treating psychiatric clinic records, let alone for any duration period at issue. Such extreme functional limitation also has not been documented as a clinically observed migraine headache as recorded with

[3] The court also notes that the neurology record regarding the pharmacy request to refill Claimant's Aimovig in January 2024, states that a follow up with neurology was needed and scheduled for January 18, 2024, but there are no further neurology treatment notes in the record, only subsequent records from primary care. (R. 1156).

clinical description by a provider (Social Security Ruling 19-4p).

(R. 881). The ALJ also cited activities of daily living she found to be inconsistent with the alleged 15 days of incapacity from migraines each month. (R. 250, 881). Finally, the ALJ considered a March 21, 2024 letter from Meagan Holcomb, FNP with Claimant's neurology clinic, stating that her migraines had become chronic, occurred greater that 15 days per month, and were debilitating in nature due to the migraine side effects of depressed mood, difficulty and/or inability with tasks involving concentrating/reading/thinking, interrupted sleep, sensitivity to light and sound, nausea, neck pain, fatigue, lack of comprehension, and dizziness. (R. 881–82, 1636). The ALJ found that to the extent this was an opinion, it was not persuasive because it was inconsistent with the longitudinal evidence of record, discussed above, and with Holcomb's own records indicating that her medication wore off one week prior to her next Aimovig injection. (R. 882, 1546, 1551). The ALJ also noted that 10 days before Holcomb's letter, Claimant reported experiencing 5–6 migraines per week to her primary care provider, which "comes out of the blue, as there are no contemporaneous records of similar reports or treatment for an acute exacerbation of her migraines." (R. 882).

First, Claimant takes issue with the ALJ's finding that her migraines were reasonably controlled by her medication, which she contends wears off and leaves her with no relief for one week every month, exceeding the one absence a month that the VE testified was tolerable. *Id.* at 8–9. The ALJ did not ignore Claimant's allegation that the medication wears off a week prior to her next monthly shot; rather, the ALJ found that medication adjustments had resolved Claimant's migraine symptoms in the past and there was no indication the most recent exacerbation would be different. (R. 881). The ALJ extensively reviewed the treatment records and cited substantial evidence supporting this conclusion.

Specifically, the ALJ observed that despite Claimant reporting in July 2023 that her medication wore off about a week before her next dose, she failed to follow up with her neurologist regarding further medication adjustments that it was noted could be considered at her next visit in six months and, instead, simply requested a refill of her current medication in January 2024 without further follow up. (R. 882, 1156, 1546–50). It was reasonable for the ALJ to conclude that if Claimant's migraines were as frequent as she alleged, she would have followed up with her neurologist and sought medication adjustments as she had done in the past. *See Tranter v. Kijakazi*, No. 1:20-CV-280-MOC, 2021 WL 5018699, at *9 (W.D.N.C. Oct. 28, 2021) ("Although Plaintiff disagrees with the ALJ's observations, the ALJ is permitted to draw meaningful inferences from the facts.") (citing *Gatson v. Berryhill*, 1:17-CV-182, 2018 WL 3873593, at *6 (W.D.N.C. 2018) (stating that it is not improper for the ALJ to consider the absence of evidence when formulating the RFC)). Furthermore, while Claimant contends the ALJ's assessment of the facts was incorrect and the ALJ ignored periods of waxing and waning, citing periods of migraine exacerbations, Pl.'s Br. [DE-17] at 8–9, as explained above, the ALJ addressed this evidence, finding that medication adjustments alleviated her symptoms after each period of migraine recurrence, (R. 880–81). It is not the court's role to reweigh evidence the ALJ has already considered. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) ("[I]n reviewing for substantial evidence, [the court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ." ) (citation omitted).

Second, Claimant contends the ALJ improperly required objective evidence of Claimant's allegations regarding the frequency and intensity of her symptoms and argues that the ALJ should have viewed her use of injections, different medications, and different doses, as well as specialty treatment from neurology and physical therapy, as an indication that her symptoms were intense

and persistent. Pl.'s Br. [DE-17] at 9–11. In *Taylor v. Astrue*, the court determined that the ALJ erred by discounting the claimant's complaints of pain associated with her headaches based in part on a lack of objective evidence, because "migraines cannot be diagnosed or confirmed through laboratory or diagnostic testing." No. 7:10-cv-149-FL, 2011 WL 2669295, at *4 (E.D.N.C. May 23, 2011) (citations omitted), *report and recommendation adopted*, 2011 WL 2669290 (E.D.N.C. Jul. 7, 2011); *Strickland v. Barnhart*, 107 F. App'x 685, 689 (7th Cir. Aug. 19, 2004) ("The ALJ also appears to have thought, incorrectly, that the [normal] neurological test results somehow undercut [the plaintiff]'s claims that her migraines are severely painful. In fact, nothing in the record suggests that these tests can confirm either the existence of migraines or their likely severity."). Here, the ALJ did not require objective evidence to substantiate Claimant's migraines. The ALJ, in summarizing the treatment note of Claimant's initial evaluation with Dr. Price, recounted that a 2020 MRI showed neither seizure nor migraine focus and only mild sinusitis, consistent with a prior head CT from 2018, and that Dr. Price continued her seizure medication. (R. 880). The ALJ did not imply that this indicated Claimant did not experience migraines; rather, the ALJ determined, based on the treatment records, that when Claimant experienced migraines, they were successfully treated with medication. (R. 880–81).

Relatedly, this case differs from *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 102 (4th Cir. 2020), where the court found that the claimant's persistent attempts over the years to obtain relief supported her subjective complaints regarding her symptoms. In *Arakas*, the treatment records indicated that the claimant's symptoms were not alleviated by the various treatments she attempted, whereas, here, the ALJ cited evidence that Claimant experienced significant periods of relief in between exacerbation episodes and that treatments and medication adjustments were effective in treating both her migraines and headaches related to her cervical

spine impairment. (R. 880–82).

Third, Claimant asserts the ALJ relied on her activities of daily living to undercut her allegations without considering the extent to which she performed them. Pl.'s Br. [DE-17] at 11–12. It is well established that the "ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." *Arakas*, 983 F.3d at 99 (quoting *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). Here, the ALJ found that Claimant's activities were inconsistent with allegations that she was incapacitated by migraines for half the month. The ALJ explained that,

> since alleged onset date of June 8, 2020, the overall record reflects that she has extensive interactions with the members of her husband's church as the pastor's wife, involved with church women's group activities, managed her teen daughter's home schooling in North Carolina, enrollment in college master level studies for her interest in pastoral counseling in Fall 2022, a four month work attempt in foster system with Bertie County in Fall 2023, and significant community area driving to church, grocery store, banking errands, and for inspection visits of foster homes in Bertie County.

(R. 881). Claimant points out that her attempt to get a master's degree was unsuccessful even though she only took one class online, and she has not taken classes since 2022, (R. 914–15, 917–18); her work attempt ended because she could not work due to her migraines, (R. 918–19); she has not regularly attended religious or social activities since 2020, and she cannot do daily activities or housework on migraine days, (R. 252, 916, 920). Pl.'s Br. [DE-17] at 12. Claimant reasons that even if she can perform some degree of greater activities on her non-migraine days, that does not mean she can persist at such activity on her migraine days. *Id.*

The ALJ cited Claimant's activities as merely one factor in a larger discussion regarding her migraines, and it does not appear to have been pivotal to the ALJ's RFC determination. *See Keith E. L. v. Colvin*, No. 1:23CV1066, 2025 WL 524758, at *9 (M.D.N.C. Feb. 18, 2025)

(concluding that even if the ALJ did not accurately describe the claimant's ability to engage in daily activities, it did not support remand where it was just one of multiple factors considered by the ALJ). As explained above, the crux of the ALJ's determination was that when Claimant experienced an exacerbation in her migraines, it was adequately addressed with medication management. The court also notes that Claimant reported on her October 2021 adult function report that she participated in various church activities three times a week, (R. 254); in October 2022, she reported being in a play at the end of the month, which was after she started her monthly Aimovig injections, (R. 1602); and in October 2023, she reported that she enjoyed her foster care job, (R. 1615), which she left in December 2023, reportedly due to her impairments, but she did not report an increase in migraine frequency or symptoms to her neurologist or seek further treatment or medication adjustments for her migraines at that time or thereafter, and simply refilled her current prescription the following month, (R. 881, 1156, 1546–50). Here, "while the ALJ may not have listed every single additional qualifying statement about the extent to which [Claimant] can perform daily activities, the ALJ did demonstrate that she adequately considered them and found them to be inconsistent with specific, objective evidence in the record." *Footman v. Kijakazi*, No. 21-1116, 2023 WL 1794156, at *2 (4th Cir. Feb. 7, 2023). Accordingly, remand is not warranted based on the ALJ's consideration of Claimant's activities.

Finally, this case is distinguishable from the Fourth Circuit's decision in *Woody v. Kijakazi*, No. 22-1437, 2023 WL 5745359 (4th Cir. Sept. 6, 2023), a case in which the Fourth Circuit found the ALJ erred by not making specific findings regarding how often the claimant would be absent from work due to the frequency and severity of her headaches. In *Woody*, the court explained remand was necessary because,

> [t]he record shows that, even after receiving treatment that reduced the frequency

> of her headaches, Woody still reported getting headaches about once a week. And although Woody told her physicians the severity of her headaches had lessened with treatment, the record does not establish whether her headaches nevertheless remained severe enough to cause her to be absent from work when they occurred. The ALJ did not make specific factual findings on that point.

*Id.* at *1. Here, as discussed above, the ALJ determined that Claimant's migraines were relieved by her medication, that exacerbations were resolved by medication adjustments, and that the medical records did not support her assertion that she continued to experience debilitating migraines, as evidenced by her failure to report increased migraines to her neurologist and that she refilled her current prescription without further follow-up to discuss medication changes with her neurologist. *See Martin v. Bisignano*, No. 5:25-CV-00044-M-KS, 2026 WL 909649, at *2 (E.D.N.C. Mar. 31, 2026) (distinguishing *Woody* where the ALJ explained the claimant's headaches were not so severe in severity and duration to prevent function yet still imposed limitations regarding "exertion, postural activity, exposure to hazards, driving, and exposure to loud noise environments" to account for them). Furthermore, even though the ALJ found that Claimant's migraines were not severe, the ALJ explained, "with consideration given to both severe and nonsevere medically determinable impairments and prudent precaution," limitations to avoid all exposure to hazards and to never climb ladders, ropes, or scaffold were appropriate. (R. 880). Therefore, the court can trace the ALJ's reasoning in failing to include migraine related limitations for photophobia, phonophobia, time off task, or absenteeism in the RFC, and the ALJ's RFC is supported by substantial evidence.

## VI. CONCLUSION

For the reasons stated above, it is recommended that the final decision of the Commissioner be affirmed.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on

each of the parties or, if represented, their counsel. Each party shall have until **September 2, 2026** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 19 day of August, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge